NORTHCUTT, Judge.
The State filed a nonfinal appeal of the circuit court’s order releasing Jose Ortega from pretrial detention under sections 916.31-49, Florida Statutes (Supp.1998),[1] popularly known as the Jimmy Ryce Act. We treat this appeal as a petition for a writ of common law certiorari, see Krischer v. Ford, 847 So.2d 1050, 1051 (Fla. 4th DCA 2003), and grant the petition.
In January 1984, Ortega was convicted of sexual battery. See § 794.011, Fla. Stat. (1983). He was imprisoned and later released on probation. During his probation, he was charged and convicted of two separate offenses of lewd acts upon a child occurring between July 1, 1990, and February 1, 1991. See § 800.04, Fla. Stat. (1989). Ortega’s probation was revoked, and he was sentenced to imprisonment both for his 1984 crime and for the new crimes.
Before Ortega’s scheduled release from prison, the State began the process of determining whether he was a sexually violent predator as defined in the Act. Two doctors, William Samek and John Morin, were appointed as a multidisciplinary team to examine Ortega and assess whether he met the definition of a sexually violent predator. See § 916.33(3).[2] Both doctors opined that Ortega met the criteria for civil commitment. On January 19, 1999, the state attorney filed a petition for commitment and a motion for an ex parte determination whether there was probable cause to believe that Ortega was a sexually violent predator. See §§ 916.34, 916.35(1).[3] The circuit court entered an order finding probable cause on the same day the State’s petition and motion were filed. Consequently, Ortega was detained in a secure facility pending trial on the State’s commitment petition. See § 916.35(1).[4]
In October 1999, Ortega filed a demand for an adversarial hearing on probable cause. The court conducted a hearing on the demand, at which Ortega was represented by counsel and permitted to present evidence. Again, the court determined that there was probable cause to believe *625 Ortega was a sexually violent predator. See § 916.35(2), (4).[5]
For a number of reasons not pertinent here, Ortega’s commitment trial did not take place within thirty days of the court’s determination of probable cause, as contemplated in the Act. See § 916.36(1).[6] Trial was finally scheduled for July 21, 2003. On that date, the State informed the circuit court that it had received a new evaluation of Ortega from Dr. Samek and that the doctor no longer believed Ortega met the criteria for commitment as a sexually violent predator. The State requested a continuance to determine what effect Dr. Samek’s new opinion would have on the case. Ortega countered that there was no longer probable cause to support his pretrial detention because one of the doctors who initially evaluated him had changed his opinion. He argued that Johnson v. Department of Children & Family Services, 747 So.2d 402, 403 (Fla. 4th DCA 1999), required his release because the doctors on the multidisciplinary team were no longer unanimous in their opinion. The court agreed with Ortega’s interpretation of Johnson and released him from custody, finding that “because the multidisciplinary team’s opinion is no longer unanimous, as required by Johnson v. Department, probable cause to detain respondent no longer exists.”
The circuit court was mistaken. Johnson did not hold that probable cause to support pretrial detention under the Act must be based on the multidisciplinary team’s unanimous opinion that the respondent is a sexually violent predator. Rather, in that case the purported multidisciplinary team report, the receipt of which in turn authorized the state attorney to file the commitment petition, was made and signed by only one member of the team. As such, the Johnson court held that the report was insufficient. “An evaluation by a multidisciplinary team is, even if not jurisdictional, certainly the predicate used in this case for commencing confinement under the Act. It seems little enough for us to read the statute as requiring that both members of the team join in the assessment.” Johnson, 747 So.2d at 403. Prior to issuing its opinion, the Johnson court had ordered Johnson’s release from confinement unless a report finding that he met the requirements for designation as a sexually violent predator was filed by all members of the multidisciplinary team. In its opinion the court explained that ruling: “As there does not appear to be much in the way of evidence to support the finding of probable cause to commit petitioner to this civil confinement other than the team’s report, it assumes great significance for the confinement of this petitioner under the Act. For these reasons we ordered compliance if he is to be so held.” Johnson, 747 So.2d at 403 (emphasis added).
Thus, in Johnson the court conditionally granted a petition for writ of habeas corpus because the commitment proceeding had been commenced on the basis of a legally insufficient multidisciplinary team report. In that case the insufficient report, in turn, had formed the primary, if not sole, evidentiary basis for the ex parte probable cause determination that was required to detain the respondent pending trial on the commitment petition. Therefore, the court required the State to produce a report filed by all members of the team. Johnson simply did not hold that the ex parte probable cause determination necessary to support every pretrial detention under the Act must be supported by *626 the unanimous opinion of the multidisciplinary team.
Nor would such a holding be supported by the language of the Act. Section 916.35[7] provides simply that upon the filing of the petition the court shall determine whether there is probable cause to believe that the respondent is a sexually violent predator. The courts have held that this ex parte determination must be based on sworn proof. Melvin v. State, 804 So.2d 460, 464 (Fla. 2d DCA 2001); Alverez v. State, 840 So.2d 322 (Fla. 5th DCA 2003); Kephart v. Kearney, 826 So.2d 517 (Fla. 4th DCA 2002), review granted by Kephart v. Regier, 842 So.2d 844 (Fla.2003). But neither the statute nor case law specifies that the proof must come only from the multidisciplinary team and that the team members must be unanimous in their opinions.
Finally, even if Johnson stood for the proposition ascribed to it by Ortega and the court below, it would not control this case. The detainee in Johnson was held pursuant to a purportedly defective ex parte probable cause determination made upon the filing of the commitment petition. In contrast, at the time the State advised the court that Dr. Samek had revised his opinion in this case, Ortega was being held pursuant to a finding of probable cause made after an adversarial hearing. See Melvin, 804 So.2d at 464 (dismissing as moot habeas corpus proceeding based on defective ex parte probable cause determination where petitioner subsequently had received adversarial probable cause hearing).
It may be that Dr. Samek’s recent opinion would cause a court to conclude as a matter of fact that there is not probable cause to continue Ortega’s pretrial detention. But it does not compel that result as a matter of law. We grant the petition for writ of certiorari and quash the circuit court’s order releasing Ortega from detention.
CANADY and VILLANTI, JJ., concur.

. In 1998, the Florida Legislature enacted the "Jimmy Ryce Involuntary Civil Commitment for Sexually Violent Predators' Treatment and Care Act.” See Ch. 98-64, at 445-55, Laws of Fla.; §§ 916.31-49, Fla. Stat (Supp.1998). Effective May 26, 1999, the legislature transferred the provisions of the Jimmy Ryce Act to chapter 394, part V, Florida Statutes, and retitled the provisions "Involuntary Civil Commitment of Sexually Violent Predators.” See Ch. 99-222, at 1372-89, Laws, of Fla.; §§ 394.910-930, Fla. Stat. (1999). The petition seeking to commit Ortega as a sexually violent predator was filed in January 1999. In our analysis, we will refer to the provisions of chapter 916, but will also reference the corresponding provisions in the current statutes, contained in chapter 394, Florida Statutes (2004).

. § 394.913(3), Fla. Stat. (2004). The statute provides that the multidisciplinary team "shall include, but is not limited to, two licensed psychiatrists or psychologists or one licensed psychiatrist and one licensed psychologist.”

. §§ 394.914-.915G), Fla. Stat. (2004).

. § 394.915(1), Fla. Stat. (2004).

. § 394.915(2), (4), Fla. Stat. (2004).

. § 394.916(1), Fla. Stat. (2004).

. § 394.915, Fla. Stal. (2004).